IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CURTIS WILLIAMS | Case No. 4:08-cr-36-CDL-GMF |

**MOTION TO DISMISS INDICTMENT
PURSUANT TO THE SPEEDY TRIAL ACT**

Comes now the Defendant, Mr. Curtis Williams, by and though the undersigned counsel; and, pursuant to the terms of the Speedy Trial Act, 18 U.S.C. § 3161, et seq. (hereinafter collectively referred to as the "Act" or the "STA"), the Defendant herewith files his *Motion to Dismiss Indictment Pursuant to the Speedy Trial Act*. In support of which, Mr. Williams respectfully submits the following.

On September 30, 2008, the government secured a three-count indictment naming Mr. Williams and a co-defendant (Mr. Rudolf Jenkins). (Doc. 1). The indictment charged that on or about July 14, 2006, (Count One) Mr. Williams possessed with intent to distribute more than 50-grams of cocaine base (in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii)); and (Count Two) that (on the same day) Mr. Williams possessed with intent to distribute cocaine (in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Doc. 1). Almost one year later, the Defendant was brought before a judge of this Court for his initial appearance and arraignment (*see* Docs. 45, 46, 47) on September 28, 2009. Additionally, at the pretrial conference of January 26, 2010, this Court informed the parties that the case is set for trial on March 1, 2010. (Doc. 59).

1

The terms of the Act, however, required that Mr. Williams's trial commence "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Since Mr. Williams's first appearance "before a judicial officer of the court" occurred well after the filing and making public of the indictment in this case, the date of the Defendant's September 28, 2009, initial appearance will serve as the trigger-date under the Act. Accordingly, the Act required that Mr. Williams's trial commence no later than Monday, December 7, 2009 (seventy days after the Defendant's initial appearance). Furthermore, § 3161(h) enumerates certain "periods of delay [that] shall be excluded in computing the time within which...the trial of any such offense must commence..." However, as a review of the docket in this case demonstrates, none of the delay at play here is able to be categorized as subject to exclusion under any of the provisions of § 3161(h). Thus, pursuant to the terms of the Act, since the "defendant [] [was] not brought to trial within the time limit required by section 3161(c) as extended by 3161(h), the information or indictment **shall be dismissed on motion of the defendant**." § 3162(a)(2) (emphasis supplied). Accordingly, Mr. Williams has been entitled to STA dismissal (pursuant to §§ 3161(c)(1) & 3162(a)(2)) since December 7, 2009.

The only remaining question, therefore, is whether the dismissal of this case should be effected *with* or *without* prejudice — accordingly, under the unique facts and circumstances of this case, the Defendant maintains that § 3162(a)(2)[1] requires dismissal of this Indictment <u>with prejudice</u>.

---

[1]"In determining whether to dismiss the case with or without prejudice, the court shall consider, *among others*, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter [18 USCS §§ 3161 et seq.] and on the administration of justice." (Emphasis supplied).

As related in detail below, this case presents a number of unique facts and circumstances, most of which are proper for consideration under the "facts and circumstances *of the case* which led to dismissal" factor — however, to the extent that such a construction is not found agreeable on grounds that *those* facts and circumstances occurred earlier in the case, prior to filing of the indictment and Mr. Williams's initial appearance; then, alternatively, they could be properly considered under the "among other[] [factors]" clause of § 3162(a)(2).

On July 14, 2006 (nearly 4 years ago), Mr. Williams received a phone-call from a Mr. Lewis Williams (an acquaintance of the Defendant) (hereafter, "Lewis") asking if he had left his keys in the Defendant's van. The Defendant confirmed that Lewis's keys were in fact in his van and that he would drop them by his house that day. When the Defendant went to Lewis's residence, the 29th Street address, at which the drugs attributed the Defendant were found, to return Lewis's keys, he found no one there. As he was getting back into the driver's seat of his van, police stopped him and shortly thereafter placed the Defendant under arrest for making a false statement. Once the Defendant was hand-cuffed, the police reached into his pocket and retrieved the key-ring with which they entered the residences that were (in 2006) located at 1417 and 1419 29th Street in Columbus, Georgia. Once inside, the police found the quantity of drugs which became the focus of the instant indictment.

However, during the more than two years that passed between the arrest and indictment, sometime in 2007 or 2008, the 29th Street houses in which these drugs were located were destroyed by the city or the county (as reported by an official of the city's Geographic Information Systems Division). Furthermore, Mr. Lewis Williams, the tenant or resident of both houses, to whom the Defendant only wanted to return a set of keys, was killed in an automobile accident in the late

3

evening hours of December 30, 2007, near downtown Columbus. (*See* "Phenix City man [Lewis Williams, Jr.] dies in car crash", Columbus Ledger-Enquirer (Georgia) Tuesday, January 1, 2008.). Although the STA analysis will focus on the period of delay between September 28, 2009 (the Defendant's initial appearance) and the present, the fact that the crime scene and a key witness no longer exist should weigh heavily in favor of STA dismissal *with prejudice*.

Accordingly, in determining whether to dismiss a case with prejudice under the Act – "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter [18 U.S.C. §§ 3161 et seq.] and on the administration of justice." 18 U.S.C. § 3162(a)(2).[2] With regards to the seriousness of the offense – Mr. Williams maintains that the charged conduct is of a <u>relatively</u> benign nature. Although most courts uniformly consider all drug offenses to be "serious" for STA purposes, the Defendant maintains that an inquiry into "the seriousness of the offense" is not a "yes" or "no" question – instead, there are degrees of seriousness. The most serious of criminal offenses would likely include offenses: against nature (cannibalism, bestiality, necrophilia, etc.), against humanity (genocide, slavery, war crimes, torture, etc.), against the Nation (treason, espionage, sedition, rebellion, etc.), and against the person (murder, rape, battery, robbery, kidnaping, mayhem, etc.). A measurably lesser category of seriousness for criminal conduct would include offenses against property (burglary, theft, embezzlement, fraud, etc.), and offenses against the peace (disorderly conduct, public lewdness, disturbing the peace, etc.). Still less harmful, are the ever-increasing categories of strict liability offenses of a regulatory

---

[2] When a district court properly considers those factors and its supporting factual findings are not clearly erroneous, "the district court's judgment of how opposing considerations balance should not lightly be disturbed." *United States v. Taylor*, 487 U.S. 326, 337 (1988).

character – conduct which is not *universally* criminal, and involves significantly less harm than offenses against nature, humanity, the Nation, the person, or property – e.g., fishing without a permit, possession and use of narcotics, forging identity documents, violating a trade or travel embargo, etc. Thus, selling drugs, though prohibited by statute and denominated "serious" in the general sense, is of a *relatively* benign nature – at least on the grand scale of criminal conduct. In short, the charged conduct is only *moderately* serious at best, and Mr. Williams maintains that this factor should weigh (at least lightly) in favor of dismissal with prejudice. However, even if the conduct is considered "serious enough" to, by itself, lean slightly towards dismissal without prejudice, the seriousness of the offense is considered *only* for the purposes of weighing it against the seriousness of the delay and its effects. *See* e.g., *United States v. Simmons*, 786 F.2d 479, 485 (2d. Cir. 1986). Thus, even the most serious of criminal charges can be the subject of dismissal with prejudice if the other two factors weigh heavily against the government. In fact, the law in this Circuit would allow dismissal with prejudice even if two, of the three, factors are neutral — "the near neutrality of the first and third factors requires a closer look at the facts and circumstances surrounding the delay. If the excess of includable time was justified, dismissal without prejudice is proper; <u>otherwise, it is not</u>." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984) (emphasis supplied).

As to the second factor, Mr. Williams notes that the slow pace with which the government instituted and pursued this prosecution serves to underscore the inexcusable passage of considerably more than 70 days after the initial appearance, and that the "facts and circumstances" of this case weigh very heavily in favor of dismissal with prejudice.[3] This neglectful attitude has been reflected

---

[3]"With regard to the second factor that the statute requires a court to consider, that is, the circumstances of the case leading to dismissal...[w]e do not dispute that a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of

consistently throughout this case, manifested by: pre-indictment delay in excess of two years and two months, an additional delay of a year between indictment and initial appearance, and the unexcused passage of considerably more than 70 days following Mr. Williams's initial appearance. It would appear that the government has never viewed these charges as "serious" enough to warrant even a small measure of care in moving the case forward – Mr. Williams notes that this class of delay is exactly what the sanction of dismissal with prejudice was meant to deter.

As to the third enumerated factor (the impact of re-prosecution on the administration of this chapter and on the administration of justice)[4], the Defendant notes that if the government were allowed to proceed in such a casual manner (ignoring the dictates of the Act, **after** occasioning more

---

this issue." *United States v. Taylor*, 487 U.S. 326, 338 (1988); *see also United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. N.Y. 1990) ("With respect to the circumstances leading to the dismissal and the impact of a re-prosecution on the administration of the Speedy Trial Act and on the administration of justice, the court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question. [] A pattern of disregard for the responsibility to bring criminal cases to trial expeditiously has the potential for nullifying the requirements of the Act, for if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70-day periods in which to bring the defendant to trial.") (citing *Taylor*, 487 U.S. at 338-339).

[4]"This factor [also] requires the district court to consider whether the delay has prejudiced the defendants and whether dismissal with prejudice is warranted to ensure future compliance with the Act." *United States v. Maloy*, 835 F. Supp. 1373, 1378 (M.D. Fla. 1993) (quoting *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992), citing *United States v. Taylor*, 487 U.S. 326, 340-42 (1988)). However, the Supreme Court did not use the word "prejudice" exclusively in the context of trial-prejudice — the Court has made clear that: "[i]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."" *Taylor*, 487 U.S. at 340 (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972)).

than 3 years of pre-STA delay) and if the government were allowed to re-prosecute this case, then the Act will be rendered wholly impotent and meaningless.

If the Act contemplates that the Defendant, as well as the Public, have a right to the speedy conduct of criminal trials – and this pattern of government conduct, causing delay upon delay, is to be without any serious consequence (i.e., if re-prosecution is to be permitted, and therefore, further delay, is to be allowed), then the Act would be rendered absolutely purposeless.[5]  Therefore, Mr. Williams maintains that under the facts of this case dismissal without prejudice "would tacitly condone the Government's behavior, and that a stern response [] [is] appropriate in order to vindicate the guarantees of the Speedy Trial Act...[; which is, of course, in light of the extraordinary facts of this case, not to say that] the greater deterrent effect of barring re-prosecution could *alone* support

---

[5]The purpose of the Speedy Trial Act is not only to protect a defendant's constitutional right to a speedy trial, but also to serve the public interest in bringing prompt criminal proceedings. *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993) (citing *United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990)). Whenever the "government--for whatever reasons--falls short of meeting the Act's requirements, the administration of justice is adversely affected." *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) (quoting *United States v. Hastings*, 847 F.2d 920, 926 (1st Cir. 1988) (finding that the legislative history of the Speedy Trial Act demonstrates its importance in advancing both the public and private interests in fair and expeditious trial of criminal cases)). While not all violations of the Speedy Trial Act warrant a dismissal with prejudice, the purposes of the Act would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements. *See United States v. Clymer*, 25 F.3d 824, 832 (9th Cir. 1994) — *see also United States v. Moss*, 217 F.3d 426, 433 (6th Cir. 2000) (Gilman, Circuit Judge, concurring) ("Ordering that a serious drug indictment be dismissed with prejudice solely because of a procedural violation is highly unpalatable. But just as enforcement of the rules established in *Miranda* and in search and seizure cases sometimes requires the exclusion of critical evidence for the prosecution--because there is no other adequate means of deterring unacceptable governmental behavior--the gross violation of the Speedy Trial Act in this case requires that the indictment be dismissed with prejudice. I believe that no other outcome would be consistent with the effective enforcement of the Act."; *see also id*. at 436, "*Even* taking into account the seriousness of the offense with which Moss was charged [possession with intent to distribute 80 grams of cocaine base], I do not believe that dismissal without prejudice, considering the length and lack of justification for the delay in this case, would give adequate effect to the mandate of Congress as set forth in the Speedy Trial Act.") (emphasis supplied).

a decision to dismiss with prejudice" *Taylor*, 487 U.S. at 342 (quoting the District Judge in part) (emphasis supplied). Furthermore, as mentioned, during the several years that the government has delayed this case since the Defendant's arrest, <u>a key witness and the crime scene **no longer exist**</u>. Accordingly, with regards to the prejudice sub-prong discussed in *Taylor*, the Defendant also maintains that to allow re-prosecution after this inexcusable passage of time, in addition to trial-related prejudice (a key witness and the crime scene no longer exist), will cause (and has caused): serious interference with his liberty, as his pre-trial release has strict attendant conditions; serious curtailment of his associations; and it will unnecessarily subject him to further public obloquy, as well as to further create unnecessary anxiety in him, his family, and his friends.

## CONCLUSION

Based on the foregoing arguments, Mr. Williams maintains that the Indictment at bar is due to be summarily dismissed pursuant to the Speedy Trial Act. Further, he maintains that he has established the propriety, and necessity, of dismissal with prejudice.

Dated: This 28th day of January, 2010.

        Respectfully submitted,

        Cynthia W. Roseberry – Executive Director
        Federal Defender Program – Middle District of Georgia

            By:
            */s/ Morad Fakhimi*
            MORAD FAKHIMI
            PA Bar ID. 204228 — DC Bar ID. 974050
            Federal Defender Program – Middle District of Georgia
            440 Martin Luther King, Jr. Boulevard, Suite 400
            Macon, Georgia 31201
            Tel: (478) 743-4747 — Fax: (478) 207-3419
            Morad_fakhimi@fd.org

**CERTIFICATE OF SERVICE**

    I, Morad Fakhimi, hereby certify that on January 28, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

                  /s/ *Morad Fakhimi*
                    MORAD FAKHIMI
                    PA Bar ID. 204228 — DC Bar ID. 974050
                    Federal Defender Program – Middle District of Georgia
                    440 Martin Luther King, Jr. Boulevard, Suite 400
                    Macon, Georgia 31201
                    Tel: (478) 743-4747 — Fax: (478) 207-3419
                    Morad_fakhimi@fd.org